## SILVERSMITH v. HART et al.

No. 8630—Opinion Filed June 4, 1918.

(173 Pac. 451.)

(Syllabus.)

**1. Indians—Allotment—Improvement—Lien.**

Where an allotment made in the Cherokee Nation includes improvements appraised and disposed of under provisions of Act Cong. March 2, 1907, c. 2521, 34 Stat. 1220, a lien

on the rents and profits of the land to secure the payment of the appraised value of the improvements is created by operation of law.

### 2. Limitation of Actions—Accrual of Action.

The statute of limitations does not begin to run until a cause of action has accrued.

Error from District Court, Craig County; Preston S. Davis, Judge.

Action by Lizzie Silversmith, a minor, by W. E. Foltz, her guardian, against B. L. Hart and another. Judgment for defendants, and plaintiff brings error. Modified and affirmed.

Jess L. Ballard and E. C. Fitzgerald, for plaintiff in error.

W. H. Kornegay, for defendants in error.

OWEN, J. This action was brought by plaintiff in error in the district court of Craig county to recover possession of certain lands allotted to Lizzie Silversmith, and for rents and profits on same. Judgment was for defendants, to reverse which the case was brought here.

The case was tried by the court upon an agreed statement of facts from which it appears that the land was allotted after the passage of the act of Congress of March 2, 1907 (34 Stat. 1220), permitting certain white persons intermarried with citizens of the Cherokee Nation to sell and dispose of improvements made on lands in the Cherokee Nation to citizens of the Cherokee Nation seeking to take the land in allotment. Pursuant to this act of Congress the improvements on the land in question were appraised by the officers of the Interior Department at $1,665, and the land selected by the father of the allottee under an agreement entered into before the allotting officers, and approved by them, by which the appraised value was to be the purchase price of the improvements, and to be a lien upon the rents and profits of the land. From this stipulation it appears also:

"The question in the case is as to the right of possession under this state of facts, and the amount of rent that has been accrued since the defendant went into possession of the property, and also the question as to whether or not he has enjoyed the use of the property for a sufficient time to compensate him for the value of the improvements as fixed under the appraisement; also the question as to how long he will be permitted to occupy the premises in the event that he has not received full compensation. The plaintiff also claims that the matter is barred by the statute of limitations, and the land was selected and filed upon by John Silversmith as the father and natural guardian of the minor plaintiff, and not as the legally appointed guardian."

The court found that $120 per year was the reasonable rental value of the land, and that the purchase price of $1,665 should be credited with $825 rental value for the period Broyles had occupied the premises. The court further found plaintiff was entitled to possession, but that Broyles would be entitled to the rents and profits accruing from the land for the years 1916 to 1922, inclusive, to compensate him for the balance of $840 due on the lien of $1,665. A receiver was appointed with directions to rent the land to the best advantage and apply the rents and profits to the extinguishment of the lien.

Plaintiff in error urges that the judgment should be reversed for the reasons: (1) That it does not appear affirmatively that the original owner of the improvements perfected the lien by disposing of the improvements within 60 days after the allotment, in the manner prescribed by the act of Congress of March 2, 1907; (2) that no assignable property rights existed in the improvements; (3) and that the lien, if any ever existed, was barred by the statute of limitations, and not available as a defense in this action.

In support of the first contention, counsel urge there was a failure to comply with the terms of the act of Congress for the reason that application for allotment appears to have been made on the 2nd day of November, 1907, and a written acknowledgment of the lien was signed by the father of the allottee on the 10th day of January, 1908. Authorities are cited to the effect that the allotment was made as of the date of the application. Plaintiff's error is in assuming that the lien was created by the acknowledgment by the father of the allottee. It appears from the stipulation:

"That the improvements were duly appraised by the officers of the Interior Department, and the amount of the improvements fixed, and after this was done the land was selected in allotment by the plaintiff in error in this case, and under an agreement entered into before the allotting officers, and approved by them, by which the purchase price and appraised value of the improvements was declared to be a lien upon the rents and profits of the land."

The act of Congress referred to reads as follows:

"That for sixty days after allotment, but in no case less than sixty days after the approval of this act white persons who intermarried with Cherokee citizens, prior to December sixteenth, eighteen hundred ninety-

five, and made permanent and valuable improvements on lands belonging to the Cherokee Nation prior to the decision of the Supreme Court of the United States in the case of Daniel Red Bird, the Cherokee Nation, and others, against the United States (203 U. S. p. 76 [27 Sup. Ct. 29, 51 L. Ed. 96]), shall have the right to sell such improvements to citizens of the Cherokee Nation entitled to select allotments at a valuation to be approved by an official to be designated by the Secretary of the Interior for that purpose; and the vendor shall have a lien on the rents and profits of the land on which the improvements are located for the purchase money remaining unpaid, and shall have the right to enforce such lien in any court of competent jurisdiction: Provided, that where citizens of the Cherokee Nation entitled to allotments have heretofore applied for lands on which intermarried white persons own improvements, such citizens entitled to allotments shall have the prior right to purchase said improvements as herein provided."

When the allotment was made after appraisement of the improvements and under the agreement referred to in the stipulation, the lien was created by operation of law, and in no sense depends upon the acknowledgment signed by the father of the allottee. Nor does it avail plaintiff in this action that the allotment was selected by the father, and not by a guardian. Section 70 of the act of Congress of July 1, 1902 (chapter 1375, 32 Stat. 716, 726), commonly referred to as the Cherokee Treaty, provides:

"Allotments may be selected and homesteads designated for minors by the father or mother, if citizens, or by a guardian, or curator, or the administrator having charge of their estate, in the order named."

In support of the second contention counsel urge that the lien was not assignable for the reason that the original owner had no property rights in the improvements, citing the case of Boudinot v. Morris, 26 Okla. 768, 110 Pac. 894. In that case it was held that such improvements were not subject to barter and sale generally, and did not constitute a sufficient consideration to support a promissory note. It was held that the act of March 2, 1907, recognized an equity in those who had made such improvements and provided the exclusive remedy. That case is in no sense controlling here. In the instant case no personal liability is sought, and defendant in error does not claim to be the owner of the improvements or to have purchased same from the original owner. It is admitted in the stipulation that the allotment was made under the agreement entered into before the allotting officers, and approved by them, by the terms of which the appraised value of the improvements was declared to be a lien upon the rents and profits of the

land. It appears from the pleadings that the original owner of the improvements was in possession at the time the allotment was selected, and that Broyles went into possession as the assignee of the lien on the rents for the purchase price of the improvements. The questions presented to the lower court were the right of Broyles to retain possession under this state of facts, the amount of rent with which he should be charged, and whether this amount was sufficient to discharge the lien for the value of the improvements as fixed by the appraisement.

The original owner of the improvements, under the authority of Boudinot v. Morris, supra, had no such property rights as would authorize a barter or sale of the improvements to any persons other than those mentioned and in the manner prescribed by the terms of the act of Congress. But when the land was allotted to plaintiff and the improvements purchased by her, according to the terms of this act, the lien was perfected. The contracting parties appear to have complied with the terms of the act of Congress, and the stipulation is based upon this assumption.

The evidence supports the finding that $120 per year was a reasonable rental value of the premises for the period occupied by Broyles, but we find no evidence supporting the finding that $120 per year would be a reasonable rental value for succeeding years. The court apparently assumed that the conditions as they had existed would continue during the succeeding years. The receiver was charged with the duty of renting the premises to the best advantage and applying the proceeds to the extinguishment of the lien. When the lien is thus extinguished plaintiff will be entitled to possession of the premises free and discharged from the lien, and to that extent the judgment should be modified.

We find no merit in the contention that the lien was barred by the statute of limitations, and therefore could not be pleaded as a defense. Under section 3844, Rev. Laws 1910, a lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation. The principal obligation here was to pay $1,665, and the lien was created by operation of law upon the rents and profits to secure payment of this sum. So long as the rents were being applied to the extinguishment of the lien the statute would not begin to run. The statute of limitations begins to run from the time when a complete cause of action accrues, that is, when a suit may be maintained, and not until that time. 25 Cyc. 1065. There must have been a denial of the right or a failure to discharge the lien be-

fore a cause of action would arise. The statute of limitations does not begin to run until there is a cause of action. Section 4657, Rev. Laws 1910; Wever et al. v. Pioneer Fire Ins. Co., 49 Okla. 546, 153 Pac. 1146: Wood on Limitations, 119.

The judgment of the lower court will be modified in so far as as it decrees that the sum of $840 shall be paid defendant Broyles out of the rents and profits derived from the land during the years 1916 to 1922, inclusive, at the rate of $120 per annum and in all other respects it will be affirmed.

All the Justices concur.